UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BRIAN McNAMARA,

                            Plaintiff,                  **MEMORANDUM AND ORDER**
                                                               16 CV 1205 (DRH) (GRB)

        - against -

THE CITY OF LONG BEACH, THE LONG
BEACH VOLUNTEER FIRE DEPARTMENT
(LBVFD), SCOTT KEMINS, in his individual and
official capacity, and JACK SCHNIRMAN, in
his individual and official capacity,

                            Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**JONATHAN A. TAND & ASSOCIATES**
Attorneys for Plaintiff
990 Stewart Avenue, Suite 225
Garden City, NY 11530
By:    Jonathan A. Tand, Esq.

**OFFICE OF CORPORATION COUNSEL, CITY OF LONG BEACH**
Attorneys for Defendants
1 West Chester Street
P.O. Box 9002
Long Beach, NY 11561
By:    Robert M. Agostisi, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff Brian McNamara ("plaintiff" or "McNamara"), brings this action against defendants The City of Long Beach ("the City"), the Long Beach Volunteer Fire Department ("LBVFD"), Scott Kemins ("Kemins"), the Commissioner of Long Beach, and Jack Schnirman ("Schnirman"), the Long Beach City Manager (collectively, "defendants") alleging claims of First Amendment retaliation pursuant to 42 U.S.C. § 1983. Presently before the Court is defendants' motion to dismiss these claims pursuant to Federal Rule of Civil Procedure ("Rule")

1

12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendants' motion is denied.

## BACKGROUND

The following facts are taken from plaintiff's Complaint and are presumed to be true for purposes of the present motion.

Plaintiff started working as a firefighter in the Long Beach Fire Department ("LBFD") in 2005. The City operates both the LBFD, a paid professional firefighting force and the LBVFD, a volunteer firefighting force. Plaintiff is a member and Secretary of the Executive Board of the Long Beach Professional Firefighters Association ("LBPFA"), a labor organization that represents the paid members of the LBFD. As Secretary, he is responsible for taking minutes during monthly meetings, handling communications among members, and coordinating trainings and seminars. Additionally, according to the Complaint, as part of his role as Secretary, he wrote an article that appeared in *Newsday* "about union firefighter[s'] 'saves' " and created a website that discussed some of his concerns with the general structure of the LBVFD. (Compl. ¶ 14.)

Plaintiff was to receive an award at an official LBFD event (the "Awards Dinner") on May 10, 2014 for having saved a life in the performance of his duties. Despite being entitled to an award, plaintiff did not receive an invitation to the Awards Dinner. However, after inquiring with several executive officers about his lack of invitation, plaintiff was ultimately invited and attended the Awards Dinner and received his award. Two days prior to the announcement of the Awards Dinner, plaintiff had videotaped a fire response by the LBVFD. Plaintiff claims this conduct was part of his LBPFA secretarial responsibilities. According to plaintiff, he was initially excluded from the Awards Dinner in retaliation for this activity along with his internet postings.

At the end of the Awards Dinner, plaintiff attempted to board a bus supplied by the City to transport guests safely home, but was physically prevented from entering by two volunteer firefighters, James Jacobi ("Jacobi") and Richard DiGiacomo ("DiGiacomo"). Plaintiff claims that a verbal dispute ensued and that Jacobi physically attacked him. As a result, he got a ride home from a coworker.

However, after returning home, plaintiff decided to attend an after-party at a LBFD firehouse, Station 2. Plaintiff claims that "[g]iven the prior assault, . . . exercising an abundance of caution, [he] prudently decided to carry with him a digital audio recorder that was operating at the time he entered Station 2." (Compl. ¶ 31.) When plaintiff walked into the back area of Station 2, he was immediately confronted and attacked by several members of the LBVFD, including DiGiacomo, who grabbed and held him while Jacobi struck him multiple times. Plaintiff also claims that they "manhandled" him and forced him down a stairwell to the back deck, an enclosed outdoor space behind Station 2. He claims that DiGiacomo punched him, causing him to fall to the ground, where he was kicked and struck by one or more unknown individuals. Plaintiff ultimately reached the exit of Station 2 and escaped. However, he sustained abrasions to his shoulder, pain in his knees, neck, and back, and suffered eye injuries.

Plaintiff called Executive Officer Anthony Fallon[1] ("Fallon") to report the incident shortly after 1:00 a.m. on May 11, 2014. Later that day, he called Fallon again, and Fallon informed him that he spoke with Kemins, who stated he "just want[ed] the matter to go away." (Compl. ¶ 38.) Subsequently, plaintiff found out that Joseph Miller, a member of the LBVFD and witness to the incident, had filed a Workplace Violence Prevention Complaint against him.

---

[1] It is not clear from the Complaint whether Fallon is a member of the LBFD or the LBVFD.

On or around June 6, 2014, Kemins served plaintiff with disciplinary charges arising out of the incidents on May 10 and 11, 2014 and suspended plaintiff without pay. On July 9, 2014, the City served Plaintiff with disciplinary charges and suspended him without pay for writing a "disrespectful email," the details of which are not provided in the Complaint. (Compl. ¶ 42.) On August 7, 2014, the City again served Plaintiff with disciplinary charges and suspended Plaintiff without pay, allegedly for failing to turn over the recording of the May 10-11, 2014 events at Station 2. Finally, following a hearing over several days, Plaintiff was terminated from his position by the hearing officer, Schnirman, by decision dated December 30, 2014. Plaintiff claims that these actions were a result of unlawful retaliation against him for "speaking out on issues of public concern in the course of his duties as a citizen and as an officer of a labor union" (*id*. ¶ 47) as well as engaging in "free assembly as part of a labor union" (i*d*. ¶ 48).

## DISCUSSION

### I. *Standard of Review for Motion to Dismiss*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can

4

provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## II. Plaintiff's First Amendment Retaliation Claims

To prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Defendants first argue that "the presumption articulated by the Second Circuit in *Collins v. New York City Transit Authority* precludes [plaintiff] from showing a 'causal connection'

5

between his protected forms of expression and his discharge." (Defs.' Mem. in Supp. at 8.) In *Collins*, in the context of analyzing a Title VII employment retaliation case, the court found that "a decision [against the plaintiff] by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the . . . causal link" between the plaintiff's activity and the defendant's purported retaliatory conduct. 305 F.3d 113, 119 (2d Cir. 2002). *Collins* goes on to say that "to survive a motion for summary judgment, [plaintiff] must present strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised." *Id*. Relying on *Collins*, defendants argue that plaintiff's claims must be dismissed because he has not plead facts suggesting that the hearing before Schnirman resulting in his termination was compromised or that Schnirman's decision was wrong as a matter of fact. However, notwithstanding the question of whether *Collins* applies in the First Amendment retaliation context, it is inapplicable here as that case was decided at the summary judgment stage. Defendants provide no authority suggesting that the Court should apply *Collins* at the motion to dismiss stage, and as a result, the Court will not consider the hearing outcome in determining whether plaintiff has adequately alleged a causal connection between plaintiff's expression and his discharge. *See Sternkopf v. White Plains Hospital*, 2015 WL 5692183, n. 3 (S.D.N.Y. Sept. 25, 2015) (noting that *Collins* involved consideration of arbitration award at summary judgment stage and was inapplicable on motion to dismiss); *see also Beaton v. Metro. Trans. Auth. N.Y. City Transit*, 2016 WL 3387301, at *4 (S.D.N.Y. June 15, 2016) ("[Defendant] provides no persuasive authority for the proposition that fact-finding from an arbitration decision should be given preclusive effect in the context of a motion to dismiss.")

Defendants also argue that the Court should dismiss the claims against Schnirman and Kemins because they are entitled to immunity. (Defs. Mem. in Supp. at 14.) With respect to Schnirman, defendants initially argue that he is entitled to absolute immunity. "Absolute immunity . . . has long shielded judges from damages liability for actions taken in the exercise of their judicial functions" and has been extended to include officials who perform "quasi-judicial functions" like arbitrators. *Austern v. Chicago Bd. Of Options Exchange, Inc.*, 898 F.2d 882, 885 (2d Cir. 1990). This argument is unpersuasive, however, as defendants cite no authority persuading the Court to extend such immunity to Schnirman, in his role as the hearing officer at plaintiff's termination proceedings.

Nor is the Court persuaded to dismiss the claims against Schnirman and Kemins based on defendants' argument that both are entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (internal quotations marks and citation omitted). According to defendants, it was objectively reasonable "for Schnirman to believe that he was entitled to preside over the disciplinary hearing, and render a decision," and it was "objectively reasonable for [Kemins] to conclude that he was not violating McNamara's clearly-established rights by merely issuing disciplinary charges." (Defs.' Mem. in Supp. at 14-15.) Defendants argue that the factual record surrounding this conduct is not in dispute, and that thus, the Court should dismiss plaintiff's claims. Defendants, however, ignore the heart of plaintiff's case, i.e., his assertion that Schnirman's and Kemins's conduct was retaliatory, the facts surrounding which *are* in dispute. These facts inform whether defendants violated a clearly

7

established right of the plaintiff's. As a result, the Court cannot dismiss plaintiff's claims at this stage based on qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. The case is referred back to Magistrate Judge Brown for any remaining discovery.

**SO ORDERED.**

Dated: Central Islip, New York
April 21, 2017

/s/ _
Denis R. Hurley
Unites States District Judge